)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

THE ORIGINAL OF THE DOCUMENT
RECORDED AS
STATE OF

BUREAU OF CONVEY...

TIME

Doc 2008-174905
NOV 17, 2008 03:00 PM

| LAND COURT SYSTEM | ) | REGULAR SYSTEM |

Return by:      Mail  (    )      Pickup  ( X )

TO:   LEU & OKUDA
      Attorneys At Law
      The Merchant House
      222 Merchant Street, Main Floor
      Honolulu, Hawaii 96813
      Tel: (808) 538-1921

TMK: (4) 3-6-024-037                    Total pages: 63


MORTGAGEE'S AFFIDAVIT OF FORECLOSURE UNDER POWER OF SALE


EXHIBIT "1"

MORTGAGEE'S AFFIDAVIT OF FORECLOSURE UNDER POWER OF SALE

STATE OF HAWAII           )
                          :  SS.
CITY & COUNTY OF HONOLULU )

LESTER K.M. LEU ("Affiant"), being first duly sworn upon oath, deposes and says as follows:

1.    Affiant is an attorney licensed to practice law in the State of Hawaii.

2.    Affiant represents, and was at all relevant times herein authorized to act on behalf of RESMAE LIQUIDATION PROPERTIES LLC ("Mortgagee") in the matters set forth herein. Affiant makes this Affidavit based on personal knowledge and belief, and is competent to testify to the facts stated herein on the documents, papers or things kept in the course of the regularly conducted business activity of the Mortgagee or your Affiant.

3.    The real property that is the subject of the private power of sale (non-judicial foreclosure) described herein is located at 2888 HOOLAKO STREET, LIHUE, HAWAII 96766, T.M.K. No. (4) 3-6-024-037, and is more particularly described in Exhibit "A" attached hereto ("Property").

4.    The Mortgagee is the holder of that certain Promissory Note and Mortgage dated MARCH 26, 2007 ("Mortgage"), recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 2007-057187, as assigned to RESMAE LIQUIDATION PROPERTIES LLC,

by assignment dated AUGUST 28, 2008, recorded as aforesaid as Document no. 2008-136835.  True and correct copies of the foregoing documents are attached as Exhibits "1" (Promissory Note), "2" ("Mortgage") and "3" ("Assignment of Mortgage").

        5.   Affiant certifies that in compliance with and pursuant to Hawaii Revised Statutes 667-5 through 667-10 and that certain Note and Mortgage, Mortgagee or its representative, or Affiant, or her representative did the following:

        a.   Sent a notice of default to the borrower(s), mortgagor(s) and guarantor(s) on MAY 20, 2008 by certified mail, return receipt requested.  The notice of default was sent in compliance with the requirements set forth in the Mortgage.  A true and correct copy of the notice and the return receipt is attached hereto as Exhibit "4".

        b.   Served a Notice of Mortgagee's Non-judicial Foreclosure Under Power of Sale ("Notice") in the form attached hereto as Exhibit "5" by certified mail, return receipt requested and by personal service, to the borrower(s), mortgagor(s), guarantor(s), the Department of Taxation of the State of Hawaii, the Director of Finance of the County of KAUAI, and all other parties who have recorded encumbrances, liens and/or other claims against the Property or who have requested notice under Hawaii Revised Statutes Section 667-6.  A list of these parties is attached hereto as Exhibit "6".  True and

2

correct copies of the certificates of mailing and the return receipts signed by the addressees [or the returns of service acknowledged by the recipients] are attached hereto as Exhibit "7".

c.    Sent a copy of the Notice by U.S. Mail, postage prepaid, to the borrower(s), mortgagor(s), and guarantor(s) addressed to their last known address.

d.    Caused a copy of the Notice to be posted on the Property for a period of not less than twenty-one (21) days before the date of the public auction sale, as evidenced by a true and correct copy of the Affidavit of Posting attached as Exhibit "8".

e.    Caused the publication in the Honolulu Star Bulletin of an advertisement setting forth a summary description of the Property, the Mortgagee's intention to foreclose pursuant to the power of sale in the Mortgage, and the date, time, place at which, and the conditions under which the public auction sale was to be held.  The notice was published once in each of three successive weeks commencing on OCTOBER 6, 2008, with the last publication having been not less than fourteen (14) days before the date of the public auction sale, as evidenced by a true and correct copy of the Affidavit of Publication attached hereto as Exhibit "9".

3

f.   Conducted the public auction sale on NOVEMBER 13, 2008, at the date, time, and place set forth in the Notice and under the conditions stated therein, and Affiant, or her representative, declared the Property sold to RESMAE LIQUIDATION PROPERTIES LLC, for $416,900.20, which was the highest bid at said sale.

6.   At the time of the sale, the default remained uncured.

7.   In compliance with Hawaii Revised Statutes, Chapter 667, Mortgagee will do the following:

a.   Cause a conveyance of the Property by way of a Mortgagee's Quitclaim Deed to be delivered to said purchaser, or the purchaser's nominee.  The closing date of the transaction is the date of recordation of the deed.

b.   Cause the distribution of the excess proceeds, if any to other lienholders or persons having an interest in the Property of record, if any, in order of priority, with any remainder being distributed to the borrower(s).

8.   Affiant certifies that none of the borrower(s) or mortgagor(s) is in the military service as evidenced by a true and correct copy of the Department of Defense Manpower Data Center report(s) dated AUGUST 15, 2008, attached hereto as Exhibit "10".

9.   In consideration of the conveyance of the Property, the Mortgagee hereby waives, releases and relinquishes its right

4

to seek or to collect any deficiency or judgment against the
borrower(s) and guarantor(s), and confirms that the debt secured
by the Property is released and satisfied in its entirety.

FURTHER AFFIANT SAYETH NAUGHT.

LESTER K.M. LEU
Attorney for Mortgagee

Subscribed and sworn to before me

This _17_ day of _November_, 2008.

Doc Date: _11/17/08_   # Pages: _63_

STEPHEN Y. LAU     First Circuit

Doc Description: MORTGAGEE'S AFFIDAVIT

OF FORECLOSURE UNDER POWER OF SALE

My commission expires 04/02/2011.

5

# Exhibit "A"

TMK: (4) 3-6-024-037

## EXHIBIT "A"

All of that certain parcel of land situate at Kalapaki, Lihue,
District of Puna, Island and County of Kauai, State of Hawaii, being
LOT 148 of the "LIHUE TOWN ESTATES", as shown on File Plan Number
1408, filed in the Bureau of Conveyances of the State of Hawaii, and
containing an area of 6,000 square feet, more or less.

BEING THE PREMISES ACQUIRED BY WARRANTY DEED

GRANTOR    :  JUN MATSUYOSHI, wife of Fred Bachmann, LEIGH
              MATSUYOSHI, unmarried, YUKI YOSHI, unmarried,
              GLORIA CORCINO, wife of Peter Corcino, ROBIN A.
              MATSUYOSHI, husband of Stephanie Matsuyoshi, JOHN
              E. MATSUYOSHI, husband of Ruth Matsuyoshi, and
              THOMAS K. MATSUYOSHI, husband of Lanie Matsuyoshi

GRANTEE    :  LEIGH MATSUYOSHI, unmarried, as Tenant in Severalty

DATED      :  February 13, 2007
RECORDED   :  Document No. 2007-057186

DATE PRINTED:   8/13/2008

STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

NAME OF OWNER: MATSUYOSHI,LEIGH
LEASED TO      :

TAX MAP KEY

DIVISION ZONE SECTION PLAT PARCEL HPR NO.
  (4)      3      6      024   037   0000

CLASS: 8                AREA ASSESSED:              6,000 SF

ASSESSED VALUES FOR CURRENT YEAR TAXES:  2008

This certifies that the records of this division show the
assessed values and taxes on the property designated by Tax Key shown
above are as follows:

| | | |
|---|---|---|
| BUILDING | $ | 197,000 |
| EXEMPTION | $ | 48,000 |
| NET VALUE | $ | 149,000 |
| LAND | $ | 288,000 |
| EXEMPTION | $ | 0 |
| NET VALUE | $ | 288,000 |
| TOTAL NET VALUE | $ | 437,000 |

Installment  (1 - due 8/20;  2 - due 2/20)     Tax Info As Of -  7/02/2008

| Tax Year | Installment | Tax Amount | Penalty Amount | Interest Amount | Other Amount | Total Amount | |
|---|---|---|---|---|---|---|---|
| 2008 | 2 | 832.28 | | | | 832.28 | PENDING |
| 2008 | 1 | 832.28 | | | | 832.28 | PENDING |
| 2007 | 2 | 990.61 | | | | 990.61 | PAID |
| 2007 | 1 | 990.62 | | | | 990.62 | PAID |
| 2006 | 2 | 1,002.77 | | | | 1,002.77 | PAID |
| 2006 | 1 | 1,002.78 | | | | 1,002.78 | PAID |

Total Amount Due:      1,664.56

Penalty and Interest Computed to:  7/02/2008

# Exhibit "1"

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THAT I MUST PAY.

**March 26, 2007**              HONOLULU              HAWAII
[Date]                            [City]                [State]

**2688 HOOLAKO STREET, LIHUE, HAWAII 96766**

[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $   500,000.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
**RESMAE MORTGAGE CORPORATION**
**6 POINTE DRIVE BREA, CALIFORNIA 92821**
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  10.710% . The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
**(A) Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the  1st   day of each month beginning on    June 01, 2007    . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on     May 01, 2037
I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at  RESMAE MORTGAGE CORPORATION
**P.O. Box 729**
**Brea, CA 92822**
or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $    4,652.38   . This amount may change.
**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Date**
The interest rate I will pay may change on the first day of    May 01, 2009    , and on that day every   sixth  (6th)  month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the London Interbank offered rates for six-month U.S. dollar deposits in the London market based on quotations at five major banks ("LIBOR"), as set forth in the "Money Rates" section of *The Wall Street Journal*, or if the "Money Rates" section ceases to be published or becomes unavailable for any reason, then as set forth in a comparable publication selected by the Lender. The most recent Index available as of the date 45 days before each Change Date is called the "Current Index."

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding              Six percentage point(s) (   6.000   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point ( 0.125 %).
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than   11.710  % or less than   10.710  %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than    One     percentage points (    1.000    %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than  16.710  %, which is called the "Maximum Rate" or less than   10.710  % which is called the "Minimum Rate".

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my adjustable interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note provides for changes in the interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within  **Twenty-Four (24)**  months from the date of execution of the Security Instrument I make a full or partial Prepayment, and the total of such Prepayments in any 12-month period exceeds **TWENTY PERCENT (20%)** of the original Principal amount of the loan, I will pay a Prepayment charge in an amount equal to **SIX (6)** months' advance interest on the amount by which the total of my Prepayments within that 12-month period exceeds **TWENTY PERCENT (20%)** of the original Principal amount of the loan.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Leigh Matsuyoshi_ _____ (Seal)
**LEIGH MATSUYOSHI**                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower
                              (Sign Original Only)

# Exhibit "2"

R-1066   STATE OF HAWAII
BUREAU OF CONVEYANCES
RECORDED
MAR 29, 2007      01:00 PM

Doc No(s) 2007-057187



/s/ CARL T. WATANABE
REGISTRAR OF CONVEYANCES

20    2/2    Z9

After Recordation Return By:    Mail [X]   Pickup [ ]   To:
RESMAE MORTGAGE CORPORATION
6 Pointe Drive
Brea, CALIFORNIA 92821
Attn. Final Documents

FHTC

Escrow No. 22903241 JOA
Order No. 00178926
Total Pages:  20

[Space Above This Line For Recording Data]

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **March 26, 2007**
together with all Riders to this document.
(B) "Borrower" is **LEIGH MATSUYOSHI, UNMARRIED, AS TENANT IN SEVERALTY**

Borrower is the mortgagor under this Security Instrument.
**1002574661**

HAWAII-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3012 1/01

-6A(HI) (0005).02
Page 1 of 16                Initials: XM

VMP MORTGAGE FORMS - (800)521-7291

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) **"Lender"** is **RESMAE MORTGAGE CORPORATION**

Lender is a **Corporation**
organized and existing under the laws of **DELAWARE**
Lender's address is **6 POINTE DRIVE BREA, CALIFORNIA 92821**

(E) **"Note"** means the promissory note signed by Borrower and dated **March 26, 2007**
The Note states that Borrower owes Lender **Five Hundred Thousand and 00/100**

**Dollars**
(U.S. $      **500,000.00**   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **May 01, 2037** .

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(HI) (0005).02                     Page 2 of 16                 Initials: _AM_                 Form 3012  1/01

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
    **County**     of       **KAUAI**
   [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]:
**Attached hereto and made a part hereof as "Exhibit A."**

Parcel ID Number: **3-6-024-037-0000**        which currently has the address of
**2898 HOOLAKO STREET**                      [Street]
**LIHUE**                 [City], Hawaii **96766**   [Zip Code]
("Property Address"):

  TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

  BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(HI) (0005).02         Page 3 of 15  Initials: _VM_     Form 3012   1/01

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community

Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith

by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law

requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or

-6A(HI) (0005).02                    Page 7 of 16                    Initials: _____     Form 3012  1/01

regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement

provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually

received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any

Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give Borrower notice of sale in the manner provided in Section 15. Lender shall publish a notice of sale and shall sell the Property at the time and place and under the terms specified in the notice of sale. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower relinquishes all right of dower and curtesy in the Property.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _Leigh Matsuyoshi_____ (Seal)
                                            **LEIGH MATSUYOSHI**            -Borrower

_____          _____ (Seal)
                                                                       -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                    -Borrower

-6A(HI) (0008).02                    Page 14 of 15                    Form 3012   1/01

STATE OF HAWAII
City & County of Honolulu                                                ss:
    On this    26th    day of   March , 2007          , before me
personally appeared **LEIGH MATSUYOSHI**

to me known to be the person described in and who executed the foregoing instrument and acknowledged
that he/she/they executed the same as his/her/their free act and deed.

My Commission Expires:   3/28/2008

_____
Notary Public, State of Hawaii

        Kai Yamamoto
_____
Notary Name

## EXHIBIT "A"

All of that certain parcel of land situate at Kalapaki, Lihue, Puna, Island and County of

Kauai, State of Hawaii, described as follows:

Lot 148, area 6,000 square feet, more or less, as delineated on the map entitled "LIHUE

TOWN ESTATES", which said map was filed in the Bureau of Conveyances of the State of

Hawaii as File Plan No. 1408.

Being all of the land conveyed by the following:

WARRANTY DEED

Grantor:       JUN MATSUYOSHI, wife of Fred Bachmann, LEIGH
MATSUYOSHI, unmarried, YUKI YOSHI, unmarried, GLORIA
CORCINO, wife of Peter Corcino, ROBIN A. MATSUYOSHI,
husband of Stephanie Matsuyoshi, JOHN E. MATSUYOSHI,
husband of Ruth Matsuyoshi, and THOMAS K. MATSUYOSHI,
husband of Lanie Matsuyoshi, as Tenants in Common, each as to
an undivided one-seventh (1/7th) interest

Grantee:       LEIGH MATSUYOSHI, unmarried, as Tenant in Severalty

Dated:       February 13, 2007

Document No.       Doc 2007-057186
MAR 29, 2007 01:00 PM

Page 1 of 1

———————————————[Space Above This Line For Recording Data]———————————————

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index-Rate Caps)

THE ADJUSTABLE RATE RIDER is made this **26th** day of **March, 2007** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **RESMAE MORTGAGE CORPORATION**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

### 2888 HOOLAKO STREET, LIHUE, HAWAII 96766

[Property Address]

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **10.710%** . The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **May, 2009** , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)      Page 1 of 4                    ResMAE (R00023)

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the London interbank offered rates for six-month U.S. dollar deposits in the London market based on quotations at five major banks ("LIBOR"), as set forth in the "Money Rates" section of *The Wall Street Journal*, or if the "Money Rates" section ceases to be published or becomes unavailable for any reason, then as set forth in a comparable publication selected by the Lender. The most recent Index available as of the date 45 days before each Change Date is called the "Current Index."

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six**                            percentage points ( **6.000** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.710** % or less than **10.710** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point ( **1.000** ) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **16.710** %, which is called the "Maximum Rate" or less than **10.710** %, which is called the "Minimum Rate."

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

ResMAE (R00023)                    Page 2 of 4

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

ResMAE (R00023)                                   Page 3 of 4

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
LEIGH MATSUYOSHI                 -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

ResMAE (R00023)                          Page 4 of 4

Exhibit "3"

```
                              )
                              )
                              )
                              )
                              )        THE ORIGINAL OF THE DOCUMENT
                              )           RECORDED AS FOLLOWS:
                              )              STATE OF HAWAII
                              )
                              )        BUREAU OF CONVEYANCES
                              )
                              )    DATE................... Doc 2008-136935
                              )    DOCUMENT NO. .... AUG 28, 2008 11:00 AM
                              )
                              )
    LAND COURT SYSTEM         )          REGULAR SYSTEM
Return by:    Mail  (  )  .  Pickup  ( X )
```

TO: LEU & OKUDA
    ATTORNEYS AT LAW
    THE MERCHANT HOUSE
    222 MERCHANT STREET, MAIN FLOOR
    HONOLULU, HAWAII 96813

                        This document consists of 3 pages

                        TMK: (4) 3-6-024-037

## ASSIGNMENT OF MORTGAGE AND NOTE

This Assignment, made this 26th day of August _____,

2008, by and between MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,

INC., SOLELY AS NOMINEE FOR RESMAE MORTGAGE CORPORATION, a

DELAWARE corporation, hereinafter called the "Assignor", and

RESMAE LIQUIDATION PROPERTIES LLC, whose principal place of

business and post office address is 7101 COLLEGE BLVD. SUITE

1400, OVERLAND PARK, KS 66210, hereinafter called the

"Assignee".

J:\FORECLOS\NON-JUD\RESMAE-MATSUYOSHI 2\ASM.RTF

W I T N E S S E T H :

In consideration of the sum of ONE DOLLAR ($1.00) and other valuable consideration paid by the Assignee, the receipt of which is hereby acknowledged, the Assignor does hereby, without recourse, sell, assign, transfer, set over and deliver unto the Assignee, its successors and assigns, the mortgage and note hereinafter described, together with all the right, title and interest of the Assignor, in and to the property described in said mortgage, to wit:

> That certain mortgage made by LEIGH MATSUYOSHI, as Mortgagor, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR RESMAE MORTGAGE CORPORATION, as Mortgagee, dated MARCH 26, 2007, and recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 2007-057187

TO HAVE AND TO HOLD the same unto the Assignee, its successors and assigns forever.

IN WITNESS WHEREOF the said Assignor has executed these presents on the day and year first above written.

MORTGAGE ELECTRONIC
REGISTRATION    SYSTEMS,    INC.,
SOLELY  AS  NOMINEE  FOR  RESMAE
MORTGAGE CORPORATION

By _____
Its    SCOTT FORST, V.P.

By _____
Its    EVP Chris Miller

STATE OF _Kansas_____ )
                                          ) SS.
COUNTY OF _Johnson___ )

On this _26th_ day of _August_____, 2008, before me personally appeared _Scott Forst_ and _Chris Miller_ to be personally known, who being by me duly sworn, did say that they are the ___VP___ and ___EVP___, respectively, of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR RESMAE MORTGAGE CORPORATION, and that said instrument was signed on behalf of said corporation by authority of its Board of Directors, and the said officers acknowledged said instrument to be the free act and deed of said corporation.

_____
Notary Public, State of

My commission expires: _2-15-2012_

KELLY SCHAEFER
Notary Public, State of Kansas
My Appointment Expires
February 15, 2012

# Exhibit "4"



**ResMAE**

7101 College Blvd., Suite 1400
Overland Park, KS 66210-2082



7182 6389 3060 1237 4879

May 20, 2008

LEIGH MATSUYOSHI
2888  HOOLAKO ST
LIHUE, HI 96766

RE:
Property Address: 2888  HOOLAKO ST
LIHUE, HI 96766

Dear Mortgagor(s):

### NOTICE OF INTENT TO FORECLOSE

Your loan is in default.  Scheduled installments of principal, interest, taxes and insurance for 04/01/2008 and thereafter have not been paid.  Please understand that we report delinquent mortgage payments to major credit bureaus.  This will affect your credit rating.

Please be aware that if this is a VA loan and you are an original veteran borrower or other liable obligor, we will notify the Veterans Administration of our intent to foreclose.

In order to cure this breach of loan agreement, the total now due on your loan, including late charges, is $9,704.34. This amount, plus any additional monthly installments or assessed charges that may become due in the meantime, **must be paid in certified funds** no later than 6/20/2008.  Failure to do so will result in acceleration of the due date of all sums secured by this mortgage or deed of trust and the mortgage property being referred for foreclosure action, which may result in sale of the property.

After acceleration, the loan will be reinstated only if you comply with certain conditions and pay certain costs. Detailed information regarding the right of reinstatement and the terms of granting a reinstatement is available to you by calling or writing our office.  You have the right under law to bring a court action to assert the non-existence of default or any other defense to acceleration and sale.

We regret that it has become necessary to take this step leading to acceleration of the loan balance and foreclosure. We trust that you realize the seriousness of this situation and will make every effort to cure the default.  Please contact our office at 1-866-804-5604 if you need to discuss your account.  You may be eligible for homeowner's counseling.  Please call the Credit Counseling Center at 1-800-388-2227 for more information.

**PREVIOUS DISCHARGE IN BANKRUPTCY:** In the event that the underlying debt has been discharged as a result of a prior bankruptcy proceeding, ResMAE Mortgage hereby acknowledges that it is not assessing personal liability for the debt to the borrower(s) and that its recourse in collection matters shall be limited to the collateral described in the security instrument.

This letter is written as an attempt to collect a debt, and any information obtained will be used for that purpose.

Sincerely,

Collection Department

CO092

EFCCG4MC/V3-08

# Exhibit "5"

NOTICE OF MORTGAGEE'S NON-JUDICIAL FORECLOSURE UNDER POWER OF SALE

Pursuant to Hawaii Revised Statutes §667-5 through §667-10, as amended, and Mortgage dated MARCH 26, 2007, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 2007-057187, notice is given that RESMAE LIQUIDATION PROPERTIES LLC, as Mortgagee, whose address is 7101 COLLEGE BLVD. SUITE 1400, OVERLAND PARK, KS 66210, intends to foreclose its said mortgage and will hold a sale by public auction of Fee Simple property located at 2888 HOOLAKO STREET, LIHUE, HI 96766 (TMK: (4) 3-6-024-037), on NOVEMBER 13, 2008, at 12:00 noon, at the front entrance of the First Circuit Court located at 777 Punchbowl Street, Honolulu, Hawaii 96813. Terms of the sale are: (1) no upset price; (2) the property is sold strictly "AS IS" and "WHERE IS"; (3) the property is sold without covenant or warranty, express or implied, as to title, possession or encumbrances; (4) Purchaser must pay 10% of the highest successful bid in cash, certified or cashier's check at close of auction and prior to bidding must show proof of ability to make such payment, except for Mortgagee which may submit a credit bid up to the amount of its secured indebtedness; (5) the property is to be conveyed by Mortgagee's quitclaim conveyance, which Mortgagee shall provide within 35 days after the Affidavit of Sale is recorded, and upon payment by Purchaser of all costs related to sale, including, but not limited to costs of drafting conveyance document, notary fees, consent fees, escrow fees, conveyance taxes, and recording fees, together with any special assessments which may arise under Hawaii Revised Statutes §514B-146; (6) Purchaser shall be responsible for obtaining title insurance, if desired, however availability of title or other insurance shall not be a condition of closing; (7) the obligation for taxes and similar charges shall be prorated as of closing; (8) Purchaser may not take occupancy prior to closing and is responsible for securing possession as of closing; and (9) the sale may be postponed from time to time by public announcement made by Mortgagee or someone acting on its behalf.

NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT, THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE, AND THAT THE DEBT MAY BE DISPUTED.

Inquiries should be directed to the attorney for Mortgagee, LESTER K. M. LEU, ESQ., LEU & OKUDA, Attorneys at Law, The Merchant House, 222 Merchant Street, Main Floor, Honolulu, Hawaii 96813.

# Exhibit "6"

Parties who have recorded ecumbrances, liens and/or other claims

RE:       Non-judicial Foreclosure
            RESMAE LIQUIDATION PROPERTIES LLC
            v. LEIGH MATSUYOSHI
            Loan No.
            Property: 2888 HOOLAKO STREET, LIHUE, HAWAII 96766
            <u>TMK: (4) 3-6-024-037</u>

LEIGH MATSUYOSHI
2888 HOOLAKO STREET
LIHUE, HI 96766

JUN MATSUYOSHI
2888 HOOLAKO ST.
LIHUE, HI 96766

JUN MATSUYOSHI
30 BROOKDALE RD
BLOOMFIELD, NJ 07003

SEWER COLLECTION
DEPARTMENT OF FINANCE
COUNTY OF KAUAI
4444 RICE STREET; SUITE 280
LIHUE, HI 96766

DEPARTMENT OF TAXATION
KAUAI DISTRICT OFFICE
3060 EIWA ST., ROOM 105
LIHUE, HAWAII 96766

COUNTY OF KAUAI
DEPARTMENT OF FINANCE
REAL PROPERTY TAX COLLECTION
KAPULE BUILDING
4444 RICE STREET, SUITE 463
LIHUE, HAWAII 96766

# Exhibit "7"

RETURN AND ACKNOWLEDGMENT OF SERVICE

RE:   Non-Judicial Foreclosure
      RESMAE LIQUIDATION PROPERTIES LLC
      v. LEIGH MATSUYOSHI
      Loan No.:
      Property: 2888 HOOLAKO STREET, LIHUE, HI 96766
      TMK: (4) 3-6-024-037

DOCUMENTS SERVED:

   1. Letters dated _____, and addressed to each of
      the persons to be served.
   2. Notice of Mortgagee's Non-judicial Foreclosure Under Power of
      Sale.

I do hereby certify that I received a copy of the documents listed
above and that I served the same on the following person(s) at the
date, time and place shown:

Department of Taxation

Signature: _____

Print Name: _Pat M-_____ _Pat Macadangdang_____

Position/Title: _Clerk_____

Time: _1⁴⁰_____ a.m./(p.m.) Date: _10/3/08_____

Address: _3060 Eiwa St, Lihu_____


Real Property Tax Department

Signature: _____

Print Name: _MICHELLE L LIZAMA_____

Position/Title: _Tax Collection Supervisor_____

Time: _1:03 pm___ a.m./(p.m.) Date: _10/03/08_____

Address: _4444 Rice St, Ste 463, Lihue HI 96766_____

RETURN AND ACKNOWLEDGMENT OF SERVICE
PAGE 2

SEWER COLLECTION, DEPARTMENT OF FINANCE, COUNTY OF KAUAI

Signature: _Chly Alfh_

Print Name: _CHESTER ALFIOR_

Position/Title: _ACCOUNT TECHNICIAN_

Time: _1:10 PM_ a.m./p.m. Date: _10/03/08_

Address: _4444 Rice St, Lihue_


JUN MATSUYOSHI

Signature: _____

Print Name: _____

Time: _____ a.m./p.m. Date: _____

Address: _____

☐   Personal Service

☐   Substitute Service of LEIGH MATSUYOSHI through a person of
    suitable age and discretion then residing at his/her usual place
    of abode, since he/she could not be found after due and diligent
    search and inquiry.

☐   Substitute Service of LEIGH MATUSYOSHI through his/her authorized
    agent to receive service of process for him/her.

☐   LEIGH MATUSYOSHI was not found after due and diligent search and
    inquiry.

RETURN AND ACKNOWLEDGMENT OF SERVICE
PAGE 3

LEIGH MATSUYOSHI

Signature: _Leigh Matsuyoshi_

Print Name: _Leigh Matsuyoshi_

Time: _1:10 P.q_   a.m. /p.m. Date: _10/09/08_

Address: _2888 Hoolako Street, Lihue, HI 96766_

☒   Personal Service

☐   Substitute Service of LEIGH MATSUYOSHI through a person of
     suitable age and discretion then residing at his/her usual place
     of abode, since he/she could not be found after due and diligent
     search and inquiry.

☐   Substitute Service of LEIGH MATUSYOSHI through his/her authorized
     agent to receive service of process for him/her.

☐   LEIGH MATUSYOSHI was not found after due and diligent search and
     inquiry.


Dated: _Oct. 09, 2008_                    , Hawaii.

                                    _____
                                    Civil Deputy/Process Server

10/1/2008 3:51 PM  FROM  \vil Action Group Civil Action Group  TO: 81 (908) 794-8260   PAGE: 003 OF 006

Resmae Liquidation Properties, LLC, et. al., Plaintiff(s)
vs.
Leigh Matsuyoshi, et. al., Defendant(s)



Service of Process by
**APS International, Ltd.**
**1-800-328-7171**

APS International Plaza
7800 Glenroy Rd.
Minneapolis, MN 55439-3122

APS File #:  092422-0001

## AFFIDAVIT OF SERVICE -- Individual

Service of Process on:

LEU, OKUDA & LEU
Ms Jana Galapia
222 Merchant Street, Main Floor
Honolulu, HI 96813

--Jun Matsuyoshi
Court Case No. _____

State of: *New Jersey* } ss.
County of: *Somerset* )

**Name of Server:** *Deane Santos* , undersigned, being duly sworn, deposes and says that at the time of service, s/he was of legal age and was not a party to this action;

**Date/Time of Service:** that on the *17* day of *October* , 20 *08*, at *10:45* o'clock *A* M

**Place of Service:** at  30 Brookdale Road , in  Bloomfield, NJ 07003

**Documents Served:** the undersigned served the documents described as:
Letter; Notice of Mortgagee's Non-Judicial Foreclosure
Under Power of Sale

**Service of Process on:** A true and correct copy of the aforesaid document(s) was served on:
**Jun Matsuyoshi**

**Person Served, and Method of Service:**
[X] By personally delivering them into the hands of the person to be served.

[ ] By delivering them into the hands of _____ , a person of suitable age, who verified, or who upon questioning stated, that he/she resides with
**Jun Matsuyoshi**
at the place of service, and whose relationship to the person is: _____

**Description of Person Receiving Documents:** The person receiving documents is described as follows:
Sex *F* ; Skin Color *Asian* ; Hair Color *Black* ; Facial Hair _____
Approx. Age *50* ; Approx. Height *5'5* ; Approx. Weight *130*

[X] To the best of my knowledge and belief, said person was not engaged in the US Military at the time of service.

**Signature of Server:** Undersigned declares under penalty of perjury that the foregoing is true and correct.

~~signature~~
Signature of Server
**APS International, Ltd.**

Subscribed and sworn to before me this
*22* day of *October* , 20 *08*

~~signature~~
Notary Public   (Commission Expires)

**MARIA WEINGARTNER**
**NOTARY PUBLIC OF NEW JERSEY**
**Commission Expires 3/14/2013**

Subject Signature: refused

10/1/2008 3:51 PM FROM   All Action Group Civil Action Group TO: 81 (908)   -8260   PAGE: 004 OF 004

Resmae Liquidation Properties, LLC, et. al., Plaintiff(s)
vs.
Leigh Matsuyoshi, et. al., Defendant(s)



Service of Process by
**APS International, Ltd.**
**1-800-328-7171**

APS International Plaza
7800 Glenroy Road
Minneapolis, MN 55439-3122

APS File #: 092421-0001

## AFFIDAVIT OF DUE AND DILIGENT ATTEMPT

Service of Process on:

LEU, OKUDA & LEU
Ms Jana Galapia
222 Merchant Street, Main Floor
Honolulu, HI 96813

--Jun Matsuyoshi
Court Case No. _____

Customer File: 3888 Hoolako Street

State of: *New Jersey* ) ss.
County of: *Somerset* )

Name of Server: *Duane Santos*, undersigned, being duly sworn, deposes and says that at all times mentioned herein, s/he was of legal age and was not a party to this action;

Documents Served: the undersigned attempted to serve the documents described as:
Letter; Notice of Mortgagee's Non-Judicial Foreclosure
Under Power of Sale

Service of Process on: The undersigned attempted to serve the documents on
Jun Matsuyoshi

and after due and diligent efforts, was unable to effect service.
The following is a list of the attempts made to effect service:

Attempts:

Dates/Time/Address Attempted: 30 Brookdale Road, Bloomfield, NJ 07003

10/03/2008 - 20:00 -- No one home. No lights or vehicles observed. Neighbor confirmed Jun Matsuyoshi lives at this address.

10/04/2008 - 09:45 -- No one home. No vehicles observed. Premises remains unchanged.

Dates/Time/Address Attempted: _____

Reason for Non-Service: _____

☐ Based upon the above stated facts, Affiant believes the defendant is avoiding service.

Signature of Server:

Undersigned declares under penalty of perjury that the foregoing is true and correct.

_____
Signature of Server

Subscribed and sworn to before me this
*22* day of *October*, 20 *08*
*Maria Weingartner*
Notary Public        (Commission Expires)

**APS International, Ltd.**

**MARIA WEINGARTNER**
**NOTARY PUBLIC OF NEW JERSEY**
**Commission Expires 3/14/2013**

20/1/2006 3:31 PM  FROM:  2 Action Group Civil Action Group  TO: 81 (909)    360    PAGE: 004 OF 004

Resmae Liquidation Properties, LLC, et, al., Plaintiff(s)
vs.
Leigh Matsuyoshi, et, al., Defendant(s)



Service of Process by
**APS International, Ltd.**
**1-800-328-7171**
APS International Plaza
7800 Glenroy Road
Minneapolis, MN 55439-3122

APS File #: 093432-0001

## AFFIDAVIT OF DUE AND DILIGENT ATTEMPT

Service of Process on:

LEU, OKUDA & LEU
Ms Jenn Galanta
222 Merchant Street, Main Floor
Honolulu, HI 96813

---Jun Matsuyoshi
Court Case No. _____

Customer File: 2888 Hoolako Street

State of: _New Jersey_ ) ss.
County of: _Somerset_
Name of Server: _Duane Santos_ , undersigned, being duly sworn, deposes and says that at all times mentioned herein, s/he was of legal age and was not a party to this action:

Documents Served: the undersigned attempted to serve the documents described as:
Letter: Notice of Mortgagee's Non-Judicial Foreclosure Under Power of Sale

Service of Process on: The undersigned attempted to serve the documents on
Jun Matsuyoshi
and after due and diligent efforts, was unable to effect service.
The following is a list of the attempts made to effect service:

Attempts:

Dates/Time/Address Attempted: 30 Brookdale Road, Bloomfield, NJ 07003

**10/14/2008 - 21:40 --** No one home. No vehicles or lights observed. Spoke to neighbor, Fred Bookman stated that Mr. Matsuyoshi usually returns home very late in the evening, sometimes not until 11:30 - 12:00pm

**10/16/2008 - 06:45 --** No one home. No vehicles observed. Unale to determine if anyone was home and sleeping at this time.

Dates/Time/Address Attempted: _____
Reason for Non-Service: _____

☐ Based upon the above stated facts, Affiant believes the defendant is avoiding service.

Signature of Server:

Undersigned declares under penalty of perjury that the foregoing is true and correct.

_____
Signature of Server

APS International, Ltd.

Subscribed and sworn to before me this
_22_ day of _October_ , 20 _08_
_Maria Weingartner_
Notary Public     (Commission Expires)

**MARIA WEINGARTNER**
**NOTARY PUBLIC OF NEW JERSEY**
**Commission Expires 3/14/2013**

Exhibit "8"

AFFIDAVIT OF POSTING

STATE OF HAWAII                          )
                                         )ss.
CITY AND COUNTY OF KAUAI                 )

    CALVIN FUJIMURA, being first duly sworn on oath, deposes and says:

    On _____Oct. 06_____, 2008, I posted the NOTICE OF MORTGAGEE'S NON-JUDICIAL FORECLOSURE UNDER POWER OF SALE (a copy of which is attached) at the property located at 2888 HOOLAKO STREET, LIHUE, HI 96766.

    Further affiant sayeth naught.

_____
CALVIN FUJIMURA

Subscribed and sworn to before me this 12th day of October_____, 2008.

Doc Date: Oct 6 2008  # Pages: 1

_Fay T. Rapozo_____     _5th____ Circuit
      Name

Doc Description: AFFIDAVIT OF POSTING

_Fay Rapozo_____
My commission expires  8/18/2010 .

Doc. Date: 10-6-08   # Pages: 1
Notary Name: Fay T. Rapozo   Fifth Circuit
Doc. Description: Affidavit of posting
Fay Rapozo   10-17-08
Notary Signature        Date
NOTARY CERTIFICATION

[Notary Seal: FAY T. RAPOZO, NOTARY 82-541 PUBLIC, STATE OF HAWAII]

7160 3901 9848 1034 2967

**TO:** County of Kauai
Department of Finance
Real Property Tax Collection
Kapule Building
4444 Rice Street, Suite 463
Lihue, HA 96766

**SENDER:** JG

**REFERENCE:** RESMAE V. MATSUYOSHI 2
(NTC)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.42 |
|---|---|---|
| | Certified Fee | 2.70 |
| | Return Receipt Fee | 2.20 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | 5.32 |

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

---

**2. Article Number**

7160 3901 9848 1034 2967

**3. Service Type** CERTIFIED MAIL

**4. Restricted Delivery? (Extra Fee)** ☑ Yes

**1. Article Addressed to:**

County of Kauai
Department of Finance
Real Property Tax Collection
Kapule Building
4444 Rice Street, Suite 463
Lihue, HA 96766

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)  *N. Demn*   B. Date of Delivery  10 ✓ 8

C. Signature  X  *N. Demn*      ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☑ No

**Reference Information**

RESMAE V. MATSUYOSHI 2 (NTC)

JG

PS Form 3811, January 2005      Domestic Return Receipt

7160 3901 9848 1034 2950

**TO:**   Department of Taxation
Kauai District Office
3060 Eiwa St., Room 105
Lihue, HA 996766

**SENDER:** JG

**REFERENCE:** RESMAE V. MATSUYOSHI 2
(NTC)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.42 |
|---|---|---|
| | Certified Fee | 2.70 |
| | Return Receipt Fee | 2.20 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | 5.32 |

| US Postal Service **Receipt for Certified Mail** | POSTMARK OR DATE |
|---|---|
| No Insurance Coverage Provided Do Not Use for International Mail | |

| 2. Article Number | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| 7160 3901 9848 1034 2950 | A. Received by (Please Print Clearly)   B. Date of Delivery 10/2/08 |
| | C. Signature   X   ☐ Agent  ☐ Addressee |
| 3. Service Type   CERTIFIED MAIL | D. Is delivery address different from item 1?  ☐ Yes If YES, enter delivery address below:  ☐ No |
| 4. Restricted Delivery? (Extra Fee)   ☑ Yes | |
| 1. Article Addressed to: | |
| Department of Taxation Kauai District Office 3060 Eiwa St., Room 105 Lihue, HA 996766 | **Reference Information**  RESMAE V. MATSUYOSHI 2 (NTC)  JG |

PS Form 3811, January 2005          Domestic Return Receipt

7160 3901 9848 1034 2943

**TO:** SEWER COLLECTION
DEPARTMENT OF FINANCE
COUNTY OF KAUAI
4444 RICE STREET, SUITE 280
LIHUE, HI 96766

**SENDER:** JG

**REFERENCE:** RESMAE V. MATSUYOSHI 2
(NTC)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.42 |
|---|---|---|
| | Certified Fee | 2.70 |
| | Return Receipt Fee | 2.20 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | 5.32 |

US Postal Service

**Receipt for Certified Mail**

No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

---

| 2. Article Number | | COMPLETE THIS SECTION ON DELIVERY |
|---|---|---|
| | | A. Received by (Please Print Clearly)  Rhonda Lizama   B. Date of Delivery 10/2/8 |
| 7160 3901 9848 1034 2943 | | C. Signature  X Rhonda E. Lizama   ☐ Agent  ☐ Addressee |
| 3. Service Type   CERTIFIED MAIL | | D. Is delivery address different from item 1?   ☐ Yes   ☑ No  If YES, enter delivery address below: |
| 4. Restricted Delivery? *(Extra Fee)*   ☑ Yes | | |

1. Article Addressed to:

SEWER COLLECTION
DEPARTMENT OF FINANCE
COUNTY OF KAUAI
4444 RICE STREET, SUITE 280
LIHUE, HI 96766

**Reference Information**

RESMAE V. MATSUYOSHI 2 (NTC)

JG

PS Form 3811, January 2005          Domestic Return Receipt

7160 3901 9848 1034 2936

**TO:**   JUN MATSUYOSHI
          30 BROOKDALE RD
          BLOOMFIELD, NJ 07003

**SENDER:** JG

**REFERENCE:** RESMAE V. MATSUYOSHI 2
              (NTC)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.42 |
|---|---|---|
| | Certified Fee | 2.70 |
| | Return Receipt Fee | 2.20 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | 5.32 |

| US Postal Service | POSTMARK OR DATE |
|---|---|
| **Receipt for Certified Mail** | |
| No Insurance Coverage Provided Do Not Use for International Mail | |

7160 3901 9848 1034 2929

**TO:**   JUN MATSUYOSHI
2888 HOOLAKO ST.
LIHUE, HI 96766

**SENDER:** JG

**REFERENCE:** RESMAE V. MATSUYOSHI 2
(NTC)

PS Form 3800, January 2005

| RETURN·<br>RECEIPT<br>SERVICE | Postage | 0.42 |
|---|---|---|
| | Certified Fee | 2.70 |
| | Return Receipt Fee | 2.20 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | 5.32 |

| US Postal Service<br>**Receipt for<br>Certified Mail**<br>No Insurance Coverage Provided.<br>Do Not Use for International Mail | POSTMARK OR DATE |
|---|---|



LEU & OKUDA
ATTORNEYS AT LAW
A LAW PARTNERSHIP
THE MERCHANT HOUSE
222 MERCHANT STREET, MAIN FLOOR
HONOLULU, HAWAII 96813

CERTIFIED MAIL

JUN MATSUYOSHI
2888 HOOLAKO ST.

RESTRICTED DELIVERY

First Notice
Second Notice
Returned

OCT 2 2008

7160 3901 9848 1034 2912

**TO:** LEIGH MATSUYOSHI
2888 HOOLAKO STREET
LIHUE, HI 96766

**SENDER:** JG

**REFERENCE:** RESMAE V. MATSUYOSHI 2
(NTC)

PS Form 3800, January 2005

| RETURN RECEIPT SERVICE | Postage | 0.42 |
|---|---|---|
| | Certified Fee | 2.70 |
| | Return Receipt Fee | 2.20 |
| | Restricted Delivery | 0.00 |
| | Total Postage & Fees | 5.32 |

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided
Do Not Use for International Mail

POSTMARK OR DATE

---

**2. Article Number**

7160 3901 9848 1034 2912

**3. Service Type  CERTIFIED MAIL**

**4. Restricted Delivery?** *(Extra Fee)*  ☑ Yes

**1. Article Addressed to:**

LEIGH MATSUYOSHI
2888 HOOLAKO STREET
LIHUE, HI 96766

**RESTRICTED DELIVERY**

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)  *Leigh Matsuyoshi*   B. Date of Delivery  OCT 0 3 2008

C. Signature  *Leigh Matsuyoshi*   ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes  ☐ No
If YES, enter delivery address below:

**Reference Information**

RESMAE V. MATSUYOSHI 2 (NTC)

JG

PS Form 3811, January 2005          Domestic Return Receipt

# Exhibit "9"

IN THE MATTER OF

Resmae v. Matsuyoshi 2

}
}
}
}   *AFFIDAVIT OF PUBLICATION*
}
}
}

STATE OF HAWAII            }
                           } SS.
City and County of Honolulu }

Doc. Date: OCT 20 2008        # Pages: 1

Notary Name: Patricia K. Reese        First Judicial **Circuit**

Doc. Description: Affidavit of

Publication

*[Notary signature]* OCT 20 2008

Notary Signature        Date

*[Notary seal: PATRICIA K. REESE, NOTARY PUBLIC, (Stamp or Seal), Comm. No. 86-467, STATE OF HAWAII]*

NOTICE OF MORTGAGEE'S NON JUDICIAL FORECLOSURE UNDER POWER OF SALE

Pursuant to Hawaii Revised Statutes §667-5 through §667-10, as amended, and Mortgage dated MARCH 28, 2007, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 2007-057187, notice is given that RESMAE LIQUIDATION PROPERTIES, LLC, as Mortgagee, whose address is 7101 COLLEGE BLVD, SUITE 1400, OVERLAND PARK, KS 66210, intends to foreclose its said mortgage and will hold a sale by public auction of Fee Simple property located at 2888-HOOLAKO STREET, LIHUE, HI 96766 (TMK: (4) 3-6-024-037), at 12:00 noon, at the front entrance of the First Circuit Court located at 777 Punchbowl Street, Honolulu, Hawaii 96813... (10/6, 10/13, 10/20/08)

Rose Mae Rosales being duly sworn, deposes and says that she is a clerk, duly authorized to execute this affidavit of MidWeek Printing, Inc. publisher of MidWeek and the Honolulu Star-Bulletin, that said newspapers are newspapers of general circulation in the State of Hawaii, and that the attached notice is true notice as was published in the aforementioned newspapers as follows:

Honolulu Star-Bulletin    **3**    times on:

10/06, 10/13, 10/20/2008

Midweek Wed.    **0**    times on:

Midweek Fri.    **0**    times on:

_____    times on:

And that affiant is not a party to or in any way interested in the above entitled matter.

*[signature]*

Rose Mae Rosales

Subscribed to and sworn before me this **20th** day

of **October** A.D. 20 **08**

*[signature]*

Patricia K. Reese, Notary Public of the First Judicial Circuit, State of Hawaii

My commission expires:    October 07, 2010

*[Notary seal: PATRICIA K. REESE, NOTARY PUBLIC, Comm. No. 86-467, STATE OF HAWAII]*

Ad #    0000073753                    LN: _____

# Exhibit "10"

Request for Military Status                                                    Page 1 of 1

Department of Defense Manpower Data Center                        AUG-15-2008 12:49:34

 Military Status Report
Pursuant to the Servicemembers Civil Relief Act

| Last Name | First/Middle | Begin Date | Active Duty Status | Service/Agency |
|---|---|---|---|---|
| MATSUYOSHI | LEIGH | | Based on the information you have furnished, the DMDC does not possess any information indicating that the individual is currently on active duty. | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Military.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The Department of Defense strongly supports the enforcement of the Servicemembers Civil Relief Act [50 USCS Appx. §§ 501 et seq] (SCRA) (formerly the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's active duty status by contacting that person's Military Service via the "defenselink.mil" URL provided below. If you have evidence the person is on active-duty and you fail to obtain this additional Military Service verification, provisions of the SCRA may be invoked against you.

If you obtain further information about the person ( e.g., an SSN, improved accuracy of DOB, a middle name), you can submit your request again at this Web site and we will provide a new certificate for that query.

This response reflects current active duty status only. For historical information, please contact the Military Service SCRA points-of-contact.

See: http://www.defenselink.mil/faq/pis/PC09SLDR.html

WARNING: This certificate was provided based on a name and Social Security number (SSN) provided by the requester. Providing an erroneous name or SSN will cause an erroneous certificate to be provided.

*Report ID:BVYVUIYEHZE*